**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-06126

SAMUEL DOUGLAS, an individual, AARON BOONSTRA, an individual, and KYLE PROFITA, an individual,

Plaintiffs,

v.

RKS DESIGN & ENGINEERING LLC, a Colorado limited liability company, and AMIT SINGHAL, an individual,

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiffs Samuel Douglas, Aaron Boonstra, and Kyle Profita (collectively, "Plaintiffs"), through counsel, allege:

1. This case is about a small cell-tower engineering company whose owner admits it owes money to all of its former employees. Three of those former employees bring this action alleging that the company paid them late, short, or not at all; deducted retirement contributions from their paychecks and did not deposit them in their retirement accounts; cut off their company cards, had them pay its field and travel costs, and did not reimburse them. When each of them left in August 2024, the company did not pay the vacation they had earned or, for two of them, the anniversary bonuses its handbook promised. Its owner acknowledged the debts in writing, promised payment plans, and did not keep his promises. Plaintiffs sue for their wages, the statutory penalties, the restoration of their retirement money, and their expenses.

2. RKS Design & Engineering LLC ("Defendant RKS") is a Westminster, Colorado company that provides cell-tower engineering and field services. Amit Singhal ("Defendant

Singhal") owns and runs Defendant RKS. Defendant RKS and Defendant Singhal are referred to collectively as "Defendants."

3. Beginning in 2023, Defendant RKS's cash flow deteriorated. Defendant RKS then stopped paying its employees what they had earned. It paid salaries late, short, or not at all, and some of the payments it did make bounced. It deducted retirement-plan contributions from employees' paychecks and kept the money instead of depositing it into their retirement accounts. It cut off employees' company expense cards, required employees to pay Defendant RKS's field and travel costs out of their own pockets, and then did not reimburse them. It failed to pay the anniversary bonuses its Employee Handbook promised. It also failed to pay out accrued vacation when employees separated.

4. Each of the three Plaintiffs left Defendant RKS in August 2024. Each made a written demand for the money Defendant RKS owed him.

5. Defendant Singhal repeatedly acknowledged the debts in writing and promised payment plans, most recently on August 24, 2026, then did not pay. In a January 12, 2025 email, Defendant Singhal admitted that money would be "diverted towards all previous RKS employees," confirming that Defendant RKS owes money to multiple former employees. Several of the few retirement-plan deposits Defendant RKS made after Plaintiffs left were reversed out of their accounts within days or weeks.

6. Plaintiffs sue under the Colorado Wage Claim Act, C.R.S. § 8-4-101 et seq. (the "Wage Act"); the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.; and Colorado common law.

## PARTIES

7. Plaintiff Samuel Douglas ("Plaintiff Douglas") resides in Deuel County, Nebraska. Defendant RKS hired him as a Field Engineer by offer letter dated November 30, 2018, signed by Defendant Singhal as President, at a starting salary of $50,000 per year with health, dental, and vision benefits, one week of paid vacation, and ten paid holidays after a three-month introductory period. His first day of work was December 10, 2018. He worked for Defendant RKS as a Field Engineer, field manager, and safety trainer until his resignation; his last day of work was August 16, 2024. At separation he was salaried at $80,000 per year.

8. Plaintiff Aaron Boonstra, P.E. ("Plaintiff Boonstra"), resides in Weld County, Colorado. Defendant RKS hired him by offer letter dated October 15, 2018 as Principal Engineer. His pay terms were a $100,000 base salary, plus 7% commission on total revenue (excluding subcontractor outsource costs), plus 10% commission on net revenue from building-industry work he brought in. His benefits included a 401(k) plan with a 3% employer match and three weeks of paid vacation that carried over year to year. Defendant RKS raised his base salary to $150,000 effective August 1, 2023. His final pay period ended August 15, 2024, and his final paycheck was dated August 20, 2024.

9. Plaintiff Kyle Profita ("Plaintiff Profita") resides in Larimer County, Colorado. Defendant RKS hired him as a Field Engineer by offer letter dated December 8, 2020, signed by Defendant Singhal as President, at a starting salary of $50,000 per year with health, dental, and vision insurance, a 401(k), two weeks of paid vacation, and ten holidays after a three-month introductory period. His first day was December 9, 2020. He resigned, and his last day was August 15, 2024. At separation he was salaried at $70,000 per year.

10. Defendant RKS is a Colorado limited liability company. Its principal office is recorded with the Colorado Secretary of State at 8774 Yates Dr., Ste. 140, Westminster, Colorado 80031. Its registered agent is Amit Singhal.

11. Defendant Singhal is an individual residing in Colorado. He is Defendant RKS's President and its owner. On information and belief, he owns or controls at least twenty-five percent of Defendant RKS.

12. Defendant Singhal personally controlled Defendant RKS's payroll, expense-reimbursement, bonus, and retirement-plan remittance decisions. He signed Plaintiffs' offer letters. He decided which employees would be paid, when, how much, and from which account. He sent the emails described below.

13. Defendant Singhal is an "employer" under C.R.S. § 8-4-101(6), which adopts the definition of "employer" in the Fair Labor Standards Act, 29 U.S.C. § 203(d): any person acting directly or indirectly in the interest of an employer in relation to an employee. For conduct on and after August 6, 2025, including Defendant RKS's continuing refusal to pay after the written demands described below, Defendant Singhal is also an employer under C.R.S. § 8-4-101(6) as an individual who owns or controls at least twenty-five percent of the ownership interests in Defendant RKS. He is also an ERISA fiduciary under 29 U.S.C. § 1002(21)(A) because he exercised control over plan assets (the withheld contributions) and over plan administration.

## JURISDICTION AND VENUE

14. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) over the ERISA claims. Claims under 29 U.S.C. § 1132(a)(2) and (a)(3) are within the exclusive jurisdiction of the federal courts. 29 U.S.C. § 1132(e)(1).

15. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Wage Act, breach-of-contract, promissory-estoppel, and unjust-enrichment claims. Those claims arise from the same employment relationships, the same payroll practices, and the same course of nonpayment as the ERISA claims, and form part of the same case or controversy.

16. Venue is proper under 28 U.S.C. § 1391(b)(1)-(2) and 29 U.S.C. § 1132(e)(2). Defendants reside in this District, the Plan (defined below) was administered here, and the breaches took place here.

17. Joinder of Plaintiffs is proper under Fed. R. Civ. P. 20(a)(1). Their claims arise out of the same series of transactions: Defendant RKS's 2023-2024 practice of withholding retirement contributions, not paying anniversary bonuses, vacation, and final wages, and not reimbursing expenses after cutting off company cards. Their claims share common questions of law and fact, including Defendant Singhal's control, Defendant RKS's plan-remittance practices, and willfulness.

18. Defendant RKS's practices extended beyond Plaintiffs. In his January 12, 2025 email, Defendant Singhal stated that money would be diverted to "all previous RKS employees." Plaintiff Douglas's November 10, 2024 demand identified three former employees besides Plaintiffs, and a subcontractor, as unpaid. On July 5, 2026, the District Court for Adams County, Colorado entered judgment against Defendant RKS in *Ace Adventurer, LLC v. RKS Design & Engineering LLC*, No. 2024CV31078, for $7,451.69 plus post-judgment interest, for tower and mount mapping services performed for Defendant RKS in 2022 and 2023 that Defendant RKS did not pay for.

19. Defendant Singhal appeared for Defendant RKS pro se at the February 3, 2026 bench trial in *Ace Adventurer*, at which Plaintiff Douglas and Plaintiff Profita testified.

20. Plaintiffs reserve the right to seek leave to amend to add additional plaintiffs or to assert claims on behalf of a class or group of similarly situated current and former RKS employees if discovery shows that Defendant RKS's practices described below extended to them.

**GENERAL FACTS COMMON TO ALL PLAINTIFFS**

**A. The Employee Handbook**

21. Defendant RKS's Employee Handbook, revised August 22, 2023 (the "Handbook"), § 6.6 ("Anniversary Bonus Program"), states: "We have Anniversary bonuses. Once an employee has hit that mark they will receive the bonus listed below. Field Only Employee: 3 year Anniversary - $10,000.00 bonus; 5 year Anniversary - $15,000.00 bonus; 10 year Anniversary - $30,000.00 bonus."

22. Handbook § 6.5 ("Vacation") provides that employees earn one week of vacation per year in years one and two, two weeks per year in years three through five, and three weeks per year in years six and over, accrued at stated rates per hour worked. The notes following § 6.6 state: "Upon termination, unused earned vacation will be paid in a lump sum in the employee's final paycheck." The Handbook contains no provision capping accrued vacation or forfeiting it.

23. Defendant RKS also granted its field employees "flex days." Defendant RKS's timesheet template, on which field employees recorded their time, accrued one flex day for each Saturday, Sunday, or paid holiday worked and described flex days as "your days to take off when you return back from a trip(s)" that "do not count against PTO." Flex days were paid days off earned by working weekends and holidays, tracked separately from vacation.

24. Handbook § 3.21 ("Expense Reimbursement") provides: "Expenses incurred by an employee must have prior approval by a supervisor, as discussed in employees offer letter.

Expense reports are to be turned in and reimbursements will be paid after those expenses are reconciled."

25. Handbook § 5.3 provides: "All employees are paid Bi-Monthly. A work period is from the 1st of the month to the 15th and deposited on the 20th. The next work period is from the 16th of the month to the 31st (End of Month) and deposited on the 5th of next month."

**B. Defendant RKS's 401(k) Profit-Sharing Plan**

26. Defendant RKS sponsored and administered the RKS Design and Engineering LLC 401(k) P/S Plan (the "Plan"), a 401(k) profit-sharing plan. ShareBuilder 401k issued participant statements, and PAi, an Ascensus company, provided recordkeeping. The Plan's statements identify two contribution sources: "Employee Deferral" and "ER Match - Safe Harbor." Handbook § 6.4 describes Defendant RKS's retirement plan as a SIMPLE IRA "administered through an Investment firm and managed internally by RKS Design and Engineering LLC," with employer matching contributions equal to 100% of elective deferrals up to 3% of compensation. The Handbook's description of the plan type is inaccurate; Plaintiffs' pay stubs and account statements identify the Plan as a 401(k) plan. On information and belief, the Plan had fewer than 100 participants at the beginning of each relevant plan year.

27. Plan statements state that ending balances "do not include amounts which have not been received by the last day of the statement period shown above, even if withheld from salary before that date."

28. Defendant RKS deducted employee retirement contributions from Plaintiffs' paychecks every pay period. The deductions appear on the pay stubs. Beginning in 2023, Defendant RKS stopped depositing those contributions, and its matching contributions, into Plaintiffs' Plan accounts, while continuing to deduct them from pay. For Plaintiff Boonstra, the

last deposit Defendant RKS made before his separation was September 15, 2023, even though Defendant RKS kept deducting employee contributions from every paycheck through his final August 2024 paycheck. Plaintiff Douglas's Plan statements show no contributions received during the first three quarters of 2024, while his pay stubs show deductions every pay period. Plaintiff Profita's statements showed $0 received for pay periods in which his pay stubs showed deductions of nearly $300.

29. After Plaintiffs separated, Defendant RKS made a handful of deposits to their Plan accounts and then reversed several of them. On January 8, 2025, deposits made to Plaintiff Douglas's and Plaintiff Boonstra's accounts in December 2024 were reversed in part ($466.66 for Plaintiff Douglas; $583.34 for Plaintiff Boonstra). On April 15, 2026, a $1,000.01 deposit to Plaintiff Boonstra's account made nine days earlier was reversed. On June 15, 2026, deposits made to both accounts in May 2026 were reversed in full ($2,133.32 for Plaintiff Douglas; $3,500.00 for Plaintiff Boonstra).

30. On information and belief, the reversals occurred because Defendant RKS's funding payments to the Plan's recordkeeper were returned unpaid.

**C. Expense Cards and Reimbursements**

31. During 2023 and 2024, Defendant RKS shifted an increasing share of its travel and field expenses onto its field employees. In or about October 2023, the field employees' company credit cards stopped working.

32. On November 3, 2023, Defendant Singhal texted Plaintiff Profita a picture of a different credit card to use for flights and hotels; all other travel and field expenses were to be paid by the employee and submitted for reimbursement. Defendant RKS promised reimbursement, then reimbursed late and only in part.

**D. Late, Short, and Bounced Pay**

33. Beginning in 2023, Defendant RKS paid wages late, short, or not at all, and paid them through a shifting set of channels: its payroll service, Zelle, Venmo, and transfers from accounts at different banks. Of Plaintiff Douglas's 40 paychecks in 2023 and 2024, 33 were deposited after the payday fixed by Handbook § 5.3, by one to sixteen days. A $3,178.83 wire to Plaintiff Douglas on October 11, 2023 bounced and was reversed with a service charge. A payment deposited to Plaintiff Douglas's account on November 17, 2023 bounced and was reversed on November 21, 2023. A $2,321.36 payroll deposit to Plaintiff Profita's account was returned for insufficient funds on April 2, 2024.

**E. Defendant Singhal's Written Acknowledgments**

34. Defendant Singhal admitted the debts in writing on several occasions:

(a) June 17, 2024 email to Plaintiff Boonstra, responding to Plaintiff Boonstra's itemization of $26,230.03 owed: "I don't see anything off here. I am going to try to keep paying this balance."

(b) January 12, 2025 email: most of what Defendant RKS makes is going to the State of Colorado and a loan; after April that money, "around 35k," "will be diverted towards all previous RKS employees"; "I am still fully committed on paying everyone back asap."

(c) May 2, 2025 email to Plaintiff Boonstra: "I will pay 3k-5k a month towards your balance"; "Once I cover your 401k and commission then we should look into your vacation time"; "I don't want to keep any of your earned money."

(d) October 2, 2025 email to Plaintiff Boonstra: "I did inform towards end of 2023 the company had financial issues and 401k will be delayed."

(e) November 24 and 26, 2025 emails to Plaintiff Boonstra: "All the lost income have to be paid for in 401k for everyone. Thats just how it works"; "rest assured i will pay every penny that will be on it including lost income."

(f) May 27, 2026 email to Plaintiff Boonstra: "I will get your account settled in 6 weeks 100%. Confirmed."

(g) July 20, 2026 email to Plaintiff Boonstra, under the subject line "Payment coming this week": "should have payments made this week and next to pay everything. Still committed to get this fully resolved asap."

(h) August 24, 2026 email to Plaintiff Boonstra: "I am fully committed to pay you and others. I know i have not been able to but i am still working on it. It has been rather much difficult than i thought but i will pay you."

35. Defendant RKS did not keep those promises. Its payments to Plaintiffs since their separations are described below and fall far short of what it owes.

**FACTS: PLAINTIFF SAMUEL DOUGLAS**

36. Plaintiff Douglas worked for Defendant RKS from December 10, 2018 through August 16, 2024 as a Field Engineer, field manager, and safety trainer. His salary rose over his tenure to $80,000 per year, which is $307.69 per working day and $38.46 per hour.

37. Beginning in 2023, his paychecks came late, then short, then not at all, as described above. He kept working.

38. Defendant RKS issued Plaintiff Douglas a final pay stub dated September 9, 2024 for the period August 16-31, 2024, showing gross wages of $384.87 and net pay of $245.89. Those wages were due no later than September 5, 2024, his next regular payday. Defendant RKS

did not pay that stub. On September 16, 2024, Defendant RKS deposited $2,182.38 to Plaintiff Douglas's account; the deposit matches no pay stub.

39. Plaintiff Douglas paid Defendant RKS's field and travel expenses personally, tracked each one, and submitted them for reimbursement. Defendant RKS's reimbursements fell behind in 2023 and 2024. At his separation, Defendant RKS owed Plaintiff Douglas $12,174.39 in unreimbursed expenses.

40. Plaintiff Douglas reached his five-year anniversary on December 10, 2023, and the $15,000 Handbook bonus vested. Defendant RKS never paid it. On information and belief, Defendant RKS also promised Plaintiff Douglas a bonus of $100 for each day on which he completed four sites, and he earned 15 of those bonuses, totaling $1,500.00, that Defendant RKS never paid.

41. Defendant RKS's final pay stub for Plaintiff Douglas records 80.00 hours of accrued, unused vacation, with none used and none paid. At his salary rate ($80,000 ÷ 2,080 hours), that vacation is worth $3,076.92. Plaintiff Douglas's timesheets, kept on Defendant RKS's timesheet template, show 31 days of accrued, unused vacation (24 of them carried into 2024) and 8 flex days at separation, worth $12,000.00 at his salary rate ($80,000 ÷ 260 working days). Defendant RKS paid none of it.

42. Defendant RKS deducted retirement-plan contributions from Plaintiff Douglas's pay and stopped depositing them. Plaintiff Douglas's reconciliation of his pay stubs against his Plan statements shows $28,607.67 deducted from his pay as employee deferrals, $41,039.08 owed to his account including Defendant RKS's matching contributions, and $35,892.07 deposited, a shortfall of not less than $5,147.01. His Plan statements show no contributions received in the first three quarters of 2024, while his 2024 pay stubs through separation show

$6,446.20 in employee deferrals withheld and $2,148.68 in employer match for that year alone; the shortfall is therefore larger than $5,147.01, in an amount to be proven at trial. After his separation, Defendant RKS deposited $1,866.64 to his account in the fourth quarter of 2024, of which $466.66 was reversed on January 8, 2025; deposited $2,666.64 in April 2026; and deposited $2,133.32 on May 21, 2026, all of which was reversed on June 15, 2026. Defendant RKS's net post-separation deposits total $4,066.62.

43. Since his separation, Defendant RKS has paid Plaintiff Douglas $16,182.38: $2,182.38 on September 16, 2024; $5,000.00 on November 12, 2024; $4,000.00 on April 14, 2025; $2,000.00 on July 11, 2025; $1,000.00 on July 31, 2025; and $2,000.00 on August 13, 2025. Defendant RKS did not direct how those payments were to be applied. Plaintiff Douglas has applied them first to his final wages and then to his unreimbursed expense balance, and credits the remaining $3,623.12 against the other amounts Defendant RKS owes him.

44. On November 10, 2024, Plaintiff Douglas emailed Defendant Singhal an itemized written demand for the amounts Defendant RKS owed him: his unreimbursed expenses, the $15,000 bonus, his accrued vacation and flex days, his final paycheck, and the retirement contributions withheld from his pay, with interest. The email stated that Defendant RKS had been required to pay those amounts with his final paycheck and that Defendant RKS also owed money to five other former employees, including Plaintiff Boonstra and Plaintiff Profita, and a subcontractor. Defendant RKS paid $5,000 two days later and nothing more within 14 days.

45. In April 2025, Plaintiff Douglas emailed Defendant Singhal a second written demand, for payment in full by May 15, 2025. The email recited the payment plans Defendant Singhal had proposed and then broken: repayment to begin in November 2024, then in February

2025, then "payments to 401K immediately." Defendant RKS did not pay in full by that date and has not paid in full since.

46. On August 3, 2026, Plaintiff Douglas's counsel sent Defendant RKS and Defendant Singhal a written demand under C.R.S. § 8-4-109(3) by email. Defendant RKS did not pay within 14 days and has not paid.

47. Plaintiff Douglas's amounts owed, before penalties, interest, and lost earnings, are:

(a) Final wages for August 16, 2024: $384.87.

(b) Earned five-year anniversary bonus: $15,000.00. Four-site bonuses, on information and belief: $1,500.00.

(c) Accrued, unused vacation and flex days: not less than $3,076.92 on Defendant RKS's own records, and $12,000.00 on Plaintiff Douglas's records.

(d) Unreimbursed business expenses: $12,174.39.

(e) Employee and matching contributions not deposited: not less than $5,147.01, less Defendant RKS's net post-separation deposits of $4,066.62, in an amount to be proven at trial, plus lost investment earnings.

(f) Less Defendant RKS's post-separation payments of $16,182.38.

(g) Net, before penalties, interest, and lost earnings: not less than $15,953.80 using Defendant RKS's vacation figure, and $24,876.88 using Plaintiff Douglas's, plus the retirement shortfall.

## FACTS: PLAINTIFF AARON BOONSTRA

48. Defendant RKS hired Plaintiff Boonstra on October 15, 2018 as Principal Engineer on the offer-letter terms stated above. Defendant RKS raised his base salary to $150,000 effective August 1, 2023, which is $72.12 per hour.

49. Defendant RKS never paid Plaintiff Boonstra the 7% commission on total revenue that his offer letter promised. By June 2023, Plaintiff Boonstra was asking in writing about unpaid prior-year commissions. For 2023, Defendant RKS owes him not less than $7,500.00 in commissions, the amount he itemized in June 2024 and Defendant Singhal acknowledged. The commissions due under the offer letter for 2023 and 2024, computed at 7% of Defendant RKS's total revenue excluding subcontractor outsource costs, exceed that amount, in an amount to be determined from Defendant RKS's revenue records.

50. Defendant RKS stopped depositing his retirement contributions after September 15, 2023 while continuing to deduct them from every paycheck. His 2024 pay stubs through separation show $3,884.63 in employee deferrals withheld and $5,000.02 in employer contributions for 2024 alone.

51. Plaintiff Boonstra submitted expense reports repeatedly:

(a) March 23, 2023: $1,421.74.

(b) June 2, 2023: follow-up that also asked about unpaid prior-year commissions.

(c) November 29, 2023.

(d) February 6, 2024: $3,431.19 outstanding.

(e) March 17, 2024: $2,719.99 outstanding after a $3,000 partial payment.

(f) April 15, 2024: $1,225.93 after a $2,000 partial payment.

(g) June 17, 2024: $410.93 after a $1,000 partial payment.

52. Plaintiff Boonstra's June 17, 2024 email itemized what Defendant RKS owed him:

(a) Expenses: $410.93.

(b) Unpaid commissions: $7,500.00.

(c) Retirement contributions withheld but not deposited: $8,294.51 (2023) and $5,541.67 (2024 to date).

(d) Lost investment gains: $4,482.92 (his account had gained 32.4% since the last deposit).

(e) Total: $26,230.03.

53. Defendant Singhal replied the same morning: "I don't see anything off here. I am going to try to keep paying this balance."

54. Plaintiff Boonstra's final pay period ended August 15, 2024. His final pay stub, dated August 20, 2024, records 416.00 hours of accrued, unused vacation, with none used and none paid. At his salary rate ($150,000 ÷ 2,080 hours), that vacation is worth $30,000.00. Defendant RKS paid none of it.

55. On January 14, 2025, Defendant Singhal promised two 401(k) payments per month and follow-up emails. He did neither.

56. On April 28, 2025, Plaintiff Boonstra sent a written demand for his unpaid vacation, commissions, retirement contributions, and expenses.

57. On May 2, 2025, Defendant Singhal acknowledged the debt, promised $3,000-$5,000 per month, and stated that he would cover Plaintiff Boonstra's 401(k) and commissions first and then address his vacation time. Plaintiff Boonstra continued to demand payment in writing through August 2026, and Defendant Singhal continued to promise it, including on

October 2, 2025, November 24 and 26, 2025, May 27, 2026, July 20, 2026, and August 24, 2026. In the same exchanges Defendant Singhal admitted that he had told employees at the end of 2023 that Defendant RKS's 401(k) remittances would be delayed, and that the lost earnings on the withheld contributions "have to be paid for in 401k for everyone."

58. Since his separation, Defendant RKS has paid Plaintiff Boonstra $12,500.00: $2,000.00 on December 11, 2024; $5,000.00 on June 2, 2025; $2,500.00 on July 11, 2025; $1,500.00 on July 31, 2025; and $1,500.00 on August 13, 2025. Defendant RKS also provided value of $3,900.00: two months of health-insurance coverage after his separation ($3,200.00) and engineering reports Defendant RKS completed for him ($700.00). Plaintiff Boonstra credits all $16,400.00 against the amounts Defendant RKS owes him.

59. Defendant RKS's deposits to Plaintiff Boonstra's Plan account since his separation total $5,511.34 net: $1,750.02 on December 10, 2024; $583.34 on December 12, 2024, reversed on January 8, 2025; $1,000.01 on April 6, 2026, reversed on April 15, 2026; $2,011.32 on April 14, 2026; $1,750.00 on April 22, 2026; and $3,500.00 on May 21, 2026, reversed on June 15, 2026.

60. Defendant RKS's records and Defendant Singhal's acknowledgment show not less than $17,179.16 that Defendant RKS withheld from Plaintiff Boonstra's pay or owed as employer contributions and did not deposit through his separation: the $8,294.51 for 2023 that Plaintiff Boonstra itemized on June 17, 2024 and Defendant Singhal acknowledged, and the $8,884.65 shown on his 2024 pay stubs. Plaintiff Boonstra's reconciliation of his pay records against his Plan statements places the figure at approximately $28,148.10 and estimates lost investment earnings on it at approximately $23,929.57 to date.

61. Plaintiff Boonstra's amounts owed, before penalties and interest, are:

(a) Unpaid commissions: not less than $7,500.00.

(b) Accrued, unused vacation: $30,000.00.

(c) Unreimbursed business expenses: $410.93.

(d) Retirement contributions withheld or owed and not deposited: not less than $17,179.16, and approximately $28,148.10 on Plaintiff Boonstra's reconciliation, less Defendant RKS's net post-separation deposits of $5,511.34, plus lost investment earnings, which Plaintiff Boonstra estimates at approximately $23,929.57.

(e) Less Defendant RKS's post-separation payments and credits of $16,400.00.

(f) Net: not less than $33,178.75 before lost investment earnings, and approximately $68,077.26 on Plaintiff Boonstra's reconciliation and estimate, plus any commissions above $7,500.00, in an amount to be proven at trial.

**FACTS: PLAINTIFF KYLE PROFITA**

62. Defendant RKS hired Plaintiff Profita as a Field Engineer effective December 9, 2020. He traveled frequently and initially had a company credit card. At separation he was salaried at $70,000 per year, paid $2,916.67 per semi-monthly pay period, which is $269.23 per working day.

63. Plaintiff Profita's company card stopped working in or about October 2023. On November 3, 2023, Defendant Singhal texted him a picture of a different credit card to use for flights and hotels. From then on, Plaintiff Profita paid Defendant RKS's other travel and field expenses personally, including the daily per diem Defendant RKS owed its field employees, and submitted them for reimbursement. Defendant RKS promised reimbursement but reimbursed him late and only in part. Defendant RKS's 2024 pay stubs record reimbursements of $17,000.00

through July 2024, including $6,000.00 on his July 22, 2024 paycheck, but Defendant RKS never brought his reimbursements current. His unreimbursed travel expenses, net of the reimbursements Defendant RKS actually paid, total not less than $7,071.44.

64. His paychecks showed retirement contributions of nearly $300 each pay period, but his account statements showed $0 deposited for the same periods. Plaintiff Profita's reconciliation of his pay stubs against his account statements shows not less than $7,227.63 withheld from his pay and not deposited, the amount he demanded on August 18, 2024. The unpaid employer match and lost investment earnings are additional. Plaintiff Profita noticed the missing deposits around the end of 2023 and raised them with Defendant Singhal by phone and email.

65. He reached his three-year anniversary on December 9, 2023, and the $10,000 Handbook bonus vested. Defendant RKS never paid it.

66. He resigned, and his last day was August 15, 2024. His final wages were due on August 20, 2024, his next regular payday. As of August 18, 2024, Defendant RKS had not paid his August 5 paycheck. Defendant RKS deposited $2,011.38 to his account on September 3, 2024, and has paid him nothing since. On information and belief, that deposit was his August 5 paycheck, and Defendant RKS never paid his final paycheck, for August 1 through 15, 2024, of $2,916.67 gross.

67. At separation he had 47.25 days of accrued, unused vacation: 33.25 vacation days (including 27 days carried over from 2023 and 6.25 accrued in 2024), plus 14 flex days. At his salary rate ($70,000 ÷ 260 working days), that vacation is worth $12,721.15. Defendant RKS paid none of it.

68. On August 18, 2024, he emailed Defendant Singhal a written demand, titled "Total Amounts Owed," itemizing his accrued vacation and flex days, unreimbursed expenses, anniversary bonus, and withheld retirement contributions, and stating that his August 5 paycheck had not yet been paid. Defendant RKS did not respond and has paid none of the itemized amounts.

69. On April 29, 2025, his prior counsel sent Defendant RKS and Defendant Singhal a written demand under C.R.S. § 8-4-109(3). Defendant RKS did not respond or pay.

70. Plaintiff Profita's amounts owed, before penalties, interest, and lost earnings, are:

(a) Earned three-year anniversary bonus: $10,000.00.

(b) Accrued, unused vacation and flex days: $12,721.15.

(c) Retirement contributions withheld and not deposited: not less than $7,227.63, plus the unpaid employer match and lost investment earnings.

(d) Unreimbursed business expenses: not less than $7,071.44.

(e) Final wages for August 1 through 15, 2024, on information and belief: $2,916.67.

(f) Total: not less than $39,936.89, plus the unpaid employer match.

**TOTAL AMOUNTS OWED**

71. Plaintiffs' amounts owed, before penalties, interest, lost investment earnings, and attorney fees, total not less than $89,069.44: $15,953.80 for Plaintiff Douglas, $33,178.75 for Plaintiff Boonstra, and $39,936.89 for Plaintiff Profita. That total does not include the following, which Plaintiffs also claim:

(a) The additional $8,923.08 in vacation and flex days shown on Plaintiff Douglas's records.

(b) Plaintiff Douglas's retirement shortfall of not less than $5,147.01, less net deposits of $4,066.62; Plaintiff Boonstra's retirement contributions above $17,179.16, which his reconciliation places at approximately $28,148.10 in all; and Plaintiff Profita's unpaid employer match.

(c) Plaintiff Boonstra's commissions above $7,500.00, to be determined from Defendant RKS's revenue records.

(d) Lost investment earnings on the retirement contributions not deposited, which Plaintiff Boonstra estimates at approximately $23,929.57 for his account.

(e) Statutory penalties under C.R.S. § 8-4-109(3), interest, and attorney fees and costs.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Colorado Wage Claim Act, C.R.S. § 8-4-101 et seq.
### (All Plaintiffs v. Both Defendants)

72. Plaintiffs incorporate paragraphs 1 through 71 above.

73. Each Plaintiff was an employee of Defendant RKS, and Defendant RKS was his employer. Defendant Singhal was also his employer under C.R.S. § 8-4-101(6) and 29 U.S.C. § 203(d) because he acted directly and indirectly in Defendant RKS's interest in relation to Plaintiffs: he owned and controlled Defendant RKS, set their pay, decided whether, when, and how they would be paid, and controlled the remittance of their retirement contributions. For Defendant RKS's failures and refusals to pay on and after August 6, 2025, Defendant Singhal is also an employer as an individual who owns or controls at least twenty-five percent of the ownership interests in Defendant RKS.

74. “Wages” and “compensation” include all amounts for labor or service performed, bonuses and commissions earned in accordance with the terms of any agreement, and vacation pay earned in accordance with the terms of any agreement, which the employer must pay upon separation. C.R.S. § 8-4-101(14)(a)(I)-(III). The salary, anniversary bonuses, four-site bonuses, accrued vacation and flex days, and commissions described above are wages. Vacation pay, once earned, cannot be forfeited. C.R.S. § 8-4-121; *Nieto v. Clark's Market, Inc.*, 2021 CO 48, 488 P.3d 1140.

75. The amounts Defendant RKS deducted from Plaintiffs’ pay as retirement contributions were authorized only as deductions for contribution to the Plan. C.R.S. § 8-4-105(1)(a.5), (1)(d). Amounts withheld and not contributed to the Plan were unauthorized deductions and remain earned, vested, determinable, and unpaid wages.

76. Each Plaintiff earned wages and compensation that were vested, determinable, and due. Defendant RKS failed to pay them when due and failed to pay them at separation, as C.R.S. § 8-4-109(1) requires.

77. Each Plaintiff made a written demand under C.R.S. § 8-4-109(3)(a), and Defendant RKS did not pay the wages demanded in full within 14 days of any demand:

(a) Plaintiff Profita: August 18, 2024 and April 29, 2025.

(b) Plaintiff Boonstra: April 28, 2025.

(c) Plaintiff Douglas: November 10, 2024; April 2025; and August 3, 2026.

78. This action is also a civil action for the wages and compensation claimed in it within the meaning of C.R.S. § 8-4-109(3)(b), including any wages and compensation not itemized in an earlier demand. If Defendants do not pay those amounts within 14 days after this

action is sent to or served on them, the penalty in C.R.S. § 8-4-109(3)(b) applies to those amounts as well.

79. Under C.R.S. § 8-4-109(3)(b), Defendants are liable to each Plaintiff for his unpaid wages plus an automatic penalty of the greater of two times the unpaid wages or $1,000, or, because the failure to pay was willful, the greater of three times the unpaid wages or $3,000.

80. The nonpayment was willful. Defendant Singhal acknowledged the debts in writing and repeatedly promised payment, then did not pay. Defendant RKS continued to deduct retirement contributions it knew it was not depositing; Defendant Singhal has admitted that he knew by the end of 2023 that Defendant RKS would not remit them on time. Defendant RKS paid other obligations, including the State of Colorado and a loan, ahead of its employees' earned wages. Defendant RKS's failure to pay each Plaintiff was also its second or subsequent failure to pay employees wages or compensation of the same or similar type within the five years preceding the claim: it failed to pay accrued vacation and to remit withheld retirement contributions to each of the three Plaintiffs, and failed to pay anniversary bonuses to Plaintiff Douglas and Plaintiff Profita, and by Defendant Singhal's own account owes money to "all previous RKS employees." Those failures are per se willful under C.R.S. § 8-4-109(3)(c).

81. Plaintiffs' claims under the Wage Act are timely. Because the violations were willful, the three-year limitations period of C.R.S. § 8-4-122 applies. Each Plaintiff's final wages and accrued vacation became due on his first regular payday after his August 2024 separation; the anniversary bonuses vested on December 9 and 10, 2023; Plaintiff Boonstra's 2023 commissions became due no earlier than the end of 2023; and the withheld retirement contributions became due on each payday from which they were deducted and not remitted.

Plaintiffs seek Wage Act penalties only on contributions withheld on paydays within the limitations period; contributions withheld on earlier paydays are recovered under ERISA.

82. Plaintiffs may recover their reasonable attorney fees and costs under C.R.S. § 8-4-110(1)(b)(I).

83. Per-plaintiff amounts, exclusive of penalties, interest, and fees, are stated below. Each retirement figure is that Plaintiff's total shortfall; as stated above, Plaintiffs seek Wage Act penalties only on the part withheld on paydays within the limitations period, and recover the rest under ERISA:

(a) Plaintiff Douglas: the vested $15,000.00 bonus, four-site bonuses of $1,500.00 on information and belief, accrued vacation and flex days of not less than $3,076.92 and up to $12,000.00, and retirement contributions not deposited of not less than $5,147.01 less net deposits of $4,066.62, less the $3,623.12 credited from Defendant RKS's post-separation payments, in amounts to be proven at trial.

(b) Plaintiff Boonstra: unpaid commissions of not less than $7,500.00, accrued vacation of $30,000.00, and retirement contributions not deposited of not less than $17,179.16 less net deposits of $5,511.34, less Defendant RKS's post-separation payments and credits of $16,400.00, in amounts to be proven at trial.

(c) Plaintiff Profita: the vested $10,000.00 bonus, accrued vacation and flex days of $12,721.15, withheld retirement contributions of not less than $7,227.63, and, on information and belief, final wages of $2,916.67, in amounts to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**ERISA, 29 U.S.C. § 1132(a)(1)(B)**
**(All Plaintiffs v. Defendant RKS)**

84. Plaintiffs incorporate paragraphs 1 through 71 above.

85. The Plan is an employee pension benefit plan governed by ERISA. 29 U.S.C. § 1002(2)(A), (3). Defendant RKS is the Plan's sponsor and, on information and belief, its administrator. 29 U.S.C. § 1002(16).

86. Each Plaintiff is a participant entitled to benefits under the Plan.

87. Defendant RKS deducted contributions from each Plaintiff's pay but did not deposit them into the Plan, and did not make the matching contributions the Plan required.

88. Each Plaintiff is entitled under 29 U.S.C. § 1132(a)(1)(B) to recover the benefits due to him under the terms of the Plan, including the withheld contributions, the employer match, and the earnings those amounts would have accrued in his account, in amounts to be proven at trial, and to enforce his rights under the terms of the Plan.

**THIRD CLAIM FOR RELIEF**
**ERISA Breach of Fiduciary Duty and Prohibited Transactions, 29 U.S.C. §§ 1104(a)(1), 1106(a)(1)(D), 1106(b)(1), 1109(a), 1132(a)(2) and (a)(3)**
**(All Plaintiffs v. Both Defendants)**

89. Plaintiffs incorporate paragraphs 1 through 71, 85, and 86 above.

90. Defendant RKS and Defendant Singhal were fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) because they exercised authority and control over the disposition of plan assets and over plan administration.

91. The amounts withheld from each Plaintiff's pay became plan assets as of the earliest date they could reasonably be segregated from Defendant RKS's general assets, 29 C.F.R. § 2510.3-102(a)(1), and in no event later than the 15th business day of the month following the month in which the amounts were withheld, 29 C.F.R. § 2510.3-102(b)(1). Defendant RKS did not deposit the withheld amounts within the seven-business-day safe harbor of 29 C.F.R. § 2510.3-102(a)(2), or at all.

92. Defendant RKS and Defendant Singhal retained plan assets in Defendant RKS's general accounts and used them for Defendant RKS's own purposes, including paying other creditors.

93. That conduct breached their duties of loyalty and prudence under 29 U.S.C. § 1104(a)(1)(A) and (B); constituted a transfer of plan assets to, and use of plan assets by or for the benefit of, a party in interest, prohibited by 29 U.S.C. § 1106(a)(1)(D); and constituted dealing with plan assets in their own interest and for their own account, prohibited by 29 U.S.C. § 1106(b)(1).

94. Defendant RKS's reversal of deposits made to Plaintiffs' Plan accounts in January 2025, April 2026, and June 2026 was a further breach and a further prohibited transaction.

95. Defendant RKS and Defendant Singhal are personally liable to make good to the Plan the losses resulting from each breach and to restore to the Plan any profits made through the use of plan assets. 29 U.S.C. § 1109(a).

96. Plaintiffs are entitled to relief under 29 U.S.C. § 1132(a)(2) and (a)(3): restoration to their Plan accounts of the withheld contributions and employer match, lost earnings, surcharge, an injunction against further retention or reversal of plan assets, other appropriate equitable relief, and attorney fees and costs under 29 U.S.C. § 1132(g)(1).

97. These claims are timely under 29 U.S.C. § 1113. Fewer than six years have passed since the last missed deposit, and this action is brought within three years of the earliest date on which any Plaintiff had actual knowledge of the breaches. That date was around the end of 2023 at the earliest: Plaintiff Profita noticed missing deposits then, and by Defendant Singhal's account that is when he told employees that 401(k) remittances would be delayed. Plaintiff Douglas noticed missing deposits in early 2024, and Plaintiff Boonstra itemized his

shortfall in June 2024. Each failure to remit withheld contributions, and each reversal of a deposit, is a separate breach with its own limitations period under § 1113; the 2024 non-remittances and the 2025 and 2026 reversals each occurred within three years of this action regardless of when any Plaintiff first learned of earlier shortfalls.

**FOURTH CLAIM FOR RELIEF**
**Breach of Contract**
**(All Plaintiffs v. Defendant RKS)**

98. Plaintiffs incorporate paragraphs 1 through 71 above.

99. Defendant RKS and each Plaintiff had enforceable contracts formed by the offer letters, the Handbook's bonus and vacation-payout terms, and Defendant RKS's express promises to reimburse expenses.

100. For Plaintiff Boonstra, the contract terms include the October 15, 2018 offer letter: base salary, 7% and 10% commissions, 401(k) with 3% match, and three weeks of carryover vacation; the August 1, 2023 increase in base salary to $150,000; and the Handbook's vacation-payout term.

101. For Plaintiff Douglas, the contract terms include his November 30, 2018 offer letter, as modified by his subsequent raises; the Handbook bonus and vacation-payout terms; and, on information and belief, Defendant RKS's promise to pay the four-site bonus.

102. For Plaintiff Profita, the contract terms include the Handbook bonus and vacation-payout terms and Defendant RKS's reimbursement promises.

103. Each Plaintiff performed. Defendant RKS breached by failing to pay commissions, bonuses, final wages, and vacation payout; by failing to reimburse expenses; and by failing to deposit withheld and matching contributions.

104. Defendant Singhal's emails of June 17, 2024, January 12, 2025, May 2, 2025, October 2, 2025, November 24 and 26, 2025, May 27, 2026, July 20, 2026, and August 24, 2026 are written acknowledgments of the debts and new promises to pay them within the meaning of C.R.S. § 13-80-113, as are Defendant RKS's partial payments on the debts. Each renewed the limitations period on the debts acknowledged.

105. These claims are timely. The bonuses vested in December 2023, the 2023 commissions became due at the end of 2023, and the final wages, vacation payout, and reimbursement balances became due at the August 2024 separations, each within three years of this action. C.R.S. § 13-80-101(1)(a). The contributions withheld and not deposited, including those withheld more than three years before this action, the reimbursement balances, and the other liquidated or determinable amounts are also within the six-year period of C.R.S. § 13-80-103.5(1)(a).

106. Each Plaintiff suffered damages in amounts to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**Promissory Estoppel**
**(All Plaintiffs v. Both Defendants)**
**Pleaded in the Alternative**

107. Plaintiffs incorporate paragraphs 1 through 71 above.

108. Defendant RKS and Defendant Singhal promised to reimburse the expenses Plaintiffs advanced after the company cards were cut off, and promised payment plans in the January 2025, May 2025, November 2025, May 2026, July 2026, and August 2026 emails.

109. Defendant RKS and Defendant Singhal should reasonably have expected those promises to induce reliance.

110. Plaintiffs relied, including by continuing to work, by continuing to advance expenses, and by delaying suit.

111. Injustice can be avoided only by enforcing the promises. Plaintiffs suffered damages in amounts to be proven at trial.

**SIXTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(All Plaintiffs v. Both Defendants)**
**Pleaded in the Alternative**

112. Plaintiffs incorporate paragraphs 1 through 71 above.

113. Plaintiffs conferred benefits on Defendants by performing work for which they were not fully paid, by advancing Defendant RKS's expenses, and by allowing contributions to be withheld from their pay that Defendants kept.

114. Defendants accepted and retained those benefits.

115. Retaining the benefits without paying for them would be unjust. Plaintiffs are entitled to restitution in amounts to be proven at trial.

**PRAYER FOR RELIEF**

116. Plaintiffs ask the Court to enter judgment in their favor and against Defendants for not less than $89,069.44 ($15,953.80 for Plaintiff Douglas, $33,178.75 for Plaintiff Boonstra, and $39,936.89 for Plaintiff Profita), plus the additional amounts listed in paragraph 71, and to award, as to each Plaintiff:

(a) unpaid wages and compensation in amounts to be proven at trial and not less than the figures stated above;

(b) statutory penalties under C.R.S. § 8-4-109(3);

(c) restoration to each Plaintiff's Plan account of the withheld contributions and employer match, plus lost earnings;

(d) expense reimbursement;

(e) contract damages;

(f) prejudgment interest at eight percent per annum, compounded annually, under C.R.S. § 5-12-102(1)(b), and post-judgment interest under 28 U.S.C. § 1961;

(g) attorney fees and costs under C.R.S. § 8-4-110 and 29 U.S.C. § 1132(g)(1);

(h) equitable relief under 29 U.S.C. § 1132(a)(3); and

(i) any further relief the Court deems just.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: November 13, 2026

*/s/ Reuben A. Aguirre*
Reuben A. Aguirre
CO Bar No. 54588
Aguirre PLLC
8354 Northfield Blvd., Ste. 3700
Denver, CO 80238
720.938.3975
reuben@aguirrepllc.com

*Attorney for Plaintiffs*